**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ABELARDO LOPEZ-SALAZAR,**

    **Petitioner,**

v.                                                      **Case No.  8:06-cv-2387-T-23TBM**

**UNITED STATES OF AMERICA,**

    **Respondent.**
_____/

**REPORT AND RECOMMENDATION**

      THIS MATTER is before the court on referral by the Honorable Steven D. Merryday for a Report and Recommendation on Petitioner's **Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody** (Doc. 1) and the government's response in opposition (Doc. 5).  By his motion, the Petitioner urges he was denied the effective assistance of counsel before this court by reason of counsel's failure to file a notice of appeal after he specifically requested that counsel do so.  In response, the government urges that an evidentiary hearing is necessary.  An evidentiary hearing on the motion was conducted on April 17, 2007.

I.

A.

      A brief description of the procedural history on the underlying criminal case may be useful.[1]  On or about September 7, 2005, Abelardo Lopez-Salazar (hereinafter "Lopez-

---

[1] See Case No. 8:05-cr-388-T-23TBM.

Salazar" or "Petitioner") and Mario De Jesus Villegas Londono were indicted in a two count Indictment alleging in Count One, that they willfully conspired to possess with intent to distribute five kilograms or more of cocaine, and in Count Two, that they possessed with intent to distribute five kilograms or more of cocaine. By the allegations, Petitioner and his co-defendant committed such acts while on board a vessel subject to the jurisdiction of the United States. Petitioner made his initial appearance before the court on September 14, 2005, and was ordered detained pending further proceedings. After advisement of the charges, counsel appointed to represent Petitioner pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, entered a not guilty plea on his behalf. On November 23, 2005, Petitioner appeared before the magistrate judge and entered guilty pleas to both counts of the Indictment. The pleas were entered without benefit of a written plea agreement. At the conclusion of the proceedings, the Petitioner was referred to probation for preparation of a pre-sentence report.

Petitioner was sentenced on April 28, 2006. He received concurrent terms of imprisonment for 135 months followed by concurrent sixty-month terms of supervised release.

A notice of appeal was not filed thereafter.

On December 26, 2006, the Petitioner filed his motion to vacate sentence, and thereafter all proceedings were transferred to the above styled case.

B.

The following is a summary of the testimony taken at the evidentiary hearing. Lopez-Salazar, after being sworn, indicated he was forty-three years of age and presently incarcerated at Big Springs, Texas, serving the 135-month sentence imposed by this court.

Prior to his arrest on these charges, he was a resident of Buena Ventura, Colombia, South America, and worked as a sailor, fishing on boats. He spoke no English, had no legal training, and had no familiarity with the American criminal justice system. After his arrest on the high seas in the Pacific Ocean, he was brought to Tampa, Florida. He acknowledges the appointment of Ray Lopez as his attorney and that Mr. Lopez represented him from the initial proceeding through his sentencing on February 28, 2006. During that period, he estimated Mr. Lopez visited him three to four times at the jail. By his account, Mr. Lopez explained very little to him. Ultimately, he decided to plead guilty based on his attorney's advice that this would offer him his best opportunity. Petitioner's testimony concerning a plea agreement is somewhat confusing, but it is apparent that he and counsel discussed a proposed written plea agreement but he never entered into such an agreement. In essence, Petitioner maintains that he pled guilty on the advice of his attorney because he said it would offer the best possibility of the government helping him.

Regarding his sentencing, Lopez-Salazar recalls that his attorney asked the court for a reduced sentence and that the court rejected the request and instead sentenced him to 135 months incarceration. The judge advised him of his right to take an appeal. Petitioner insists that he told his attorney to file an appeal with the court and that he did this in front of the judge after the judge advised him of his right to take such appeal. According to Petitioner, prior to the sentencing date, Mr. Lopez did not talk with him about an appeal. Petitioner did not speak with his attorney again after his sentencing hearing.

According to the Petitioner, there was no reason for him not to appeal in this case.

On cross examination, Petitioner testified that he remained in jail locally for approximately one month after his sentencing. Thereafter, he was transported to Tallahassee,

then to Atlanta, then to Oklahoma, back to Tampa, then back to Atlanta, and ultimately to Texas, where he arrived in August 2006. Petitioner denies any suggestion by government counsel that he first thought to file his appeal after he arrived at the facility in Texas. By his account, when he arrived at that facility, he was concerned because he had not heard anything and he called his attorney's office. He spoke with Mr. Lopez's secretary who related back to him that he had "no options." He believes this was in November 2006. As a consequence of this call, Petitioner filed the instant motion.

On cross-examination, Lopez-Salazar maintained that his lawyer explained very little to him. He conceded that prior to his sentencing date, he would have learned that his guideline range was between 135 and 168 months. He further acknowledges that he discussed his case with counsel and decided that he would plead without a plea agreement. Regarding his sentencing hearing, he recalls that his lawyer made a "minor role" argument at sentencing, which was opposed by the government and rejected by the court. He insists that he told his attorney to do whatever he could in his favor, to take an appeal, and to do whatever he could because he has three children.

In response to questioning by the court, Petitioner indicated that he and counsel used an interpreter when communicating and he would have used the interpreter to advise his counsel at the sentencing proceeding to take an appeal. By his recollection, the court asked him if he wished to change counsel or continue with Mr. Lopez on an appeal and he indicated that he would like Mr. Lopez to file an appeal. On redirect, when shown and read the sentencing hearing transcript, the Petitioner suggested that it was accurate as it reflected the court's comments about his right to appeal. Although it does not reflect his statements on the record concerning an appeal, he insists he advised his attorney of his desire to take an appeal

4

before he left the courtroom. He reiterated that he had no further contact with his attorney after the hearing.

The government presented the testimony of Petitioner's attorney, Ray Lopez. Mr. Lopez indicated that he specializes in criminal defense work and has in excess of ten years' experience as an attorney. He is a member of the court's CJA Panel and has represented approximately 100 clients eligible for such representation. He recalls being appointed to represent Lopez-Salazar, although he was unable to identify him in court. By his recollection, he met with his client approximately four times before his sentencing proceeding to discuss his case, the law, and possible ways to resolve the matter. In the end, Lopez-Salazar chose not to go to trial but instead to plead guilty without the benefit of a plea agreement. While the government offered a plea agreement, counsel did not believe that it offered Petitioner any advantage in this case.

Mr. Lopez indicated he met with the Petitioner a couple of times before sentencing. He vaguely recalled that Petitioner's sentencing guidelines scored out at a Level 33, criminal history 1, and 135 months. Mr. Lopez determined to make an argument on behalf of Petitioner for a reduction in his guidelines calculation based on his minor role in the conspiracy. He did not anticipate that he would prevail on the argument, however, in his view, there was nothing to lose in making the argument. When his minor-role argument was rejected by the court, Mr. Lopez requested that the court consider sentencing Petitioner to the mandatory minimum 120-months incarceration rather than the 135 months called for by the guidelines. This too was rejected.

Mr. Lopez did not file a notice of appeal on behalf of Lopez-Salazar. He cannot recall whether the Petitioner requested that he do so. Mr. Lopez expressed his belief that if he

had been asked to file an appeal, in accordance with his usual practice, he would have done so, but he does not recall that such request was made. As to the merits of any appeal, Mr. Lopez testified that, in his view, the minor- role reduction in this case was not a close call and not a good issue to take up on appeal. If it had been, he believes that he might have spoken to the Petitioner about it. Counsel testified that he had a number of concerns about sentencing, including the possibility that his client might get enhanced because of his role as the navigator of the vessel in the case.

According to Mr. Lopez, the district judge would have advised Lopez-Salazar of his right to appeal (although he does not specifically recall this). He cannot recall his client turning to him at that point in the proceedings and requesting that he file an appeal.

Essentially, counsel maintains that had he been asked to file and appeal, he likely would have done so.

On cross examination, Mr. Lopez conceded that he did not recall everything that occurred at the sentencing proceeding and that it is possible that he was told to take an appeal and he simply cannot recall it. However, given his usual practice, had he been told to file an appeal, he would have done so. Counsel testified that usually he is the one to raise the matter of appeal rather than the client. In such cases, he would either discuss the matter post-sentencing with his client or he would have already addressed it with his client and would move ahead and file the notice (without additional discussion.). In this case, Mr. Lopez recalls discussing with Petitioner his right to appeal in connection with the discussions concerning the proposed plea agreement. He does not recall having discussed the advantages or disadvantages of such an appeal with Petitioner. Ultimately, Lopez-Salazar did not sign the plea agreement. In counsel's view, the plea agreement offered no advantages to his client in

this case and a disadvantages of signing such agreement would have been the loss of his right to appeal.

Mr. Lopez described the position taken regarding Petitioner's minor role as "arguable," and he agreed that the reasonableness of the sentence was an appealable issue as well.

II.

Lopez-Salazar claims that his defense counsel rendered ineffective assistance by failing to file a notice of appeal. To prove his claim Lopez-Salazar must meet the test established in Strickland v. Washington, 466 U.S. 668 (1984). The circuit court describes the test as follows:

> [F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998). Strickland's two-prong test governs claims that counsel was ineffective for failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000); Thompson v. United States, ___ F.3d ___, 2007 WL 824118, No. 05-16970 (11th Cir. March 20, 2007).

A.

As for the first prong of the Strickland test, the Court in Flores-Ortega addressed the standards applicable to three distinct situations involving counsel's alleged failure to protect the client's appellate rights: (1) where counsel fails to file an appeal even though the

7

defendant unquestionably expresses his desire to appeal,[2] (2) where the defendant faults counsel for not appealing even though the defendant stated that he did not want an appeal,[3] and (3) where the defendant's desire to appeal is not clearly expressed one way or another. The facts presented at the evidentiary hearing bring the Lopez-Salazar matter within either the first or the third scenario. In either case, it is my conclusion that Petitioner satisfies the first prong of the Strickland.

As set forth above, Lopez-Salazar testifies that, immediately after being advised by the court of his right to an appeal from the sentence and before leaving the courtroom, he expressly requested defense counsel (through an interpreter) to file an appeal. By counsel's testimony, Petitioner may have requested that he file an appeal, although he cannot recall that he did. Counsel implies, however, that no such request was made because in the ordinary course of his practice, had such request been made, he likely would have filed a notice of appeal. Because counsel's recollection is so vague, I cannot entirely discount Petitioner's version of these events as suggested by the government.[4] And, under the applicable standard,

---

[2] Flores-Ortega, 528 U.S. at 477 (". . . a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. . . . [A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.") (citations omitted).

[3] Flores-Ortega, 528 U.S. at 477 ("At the other end of the spectrum, a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.").

[4] It is correct that Petitioner's testimony cannot be fully credited. His initial recollection of his discussions with the court after being advised of his right to appeal is not borne out by a review of the transcript of his sentencing proceeding. However, despite this inconsistency, there is inadequate bases to entirely discount Petitioner's credibility. Former counsel does not expressly contradict him and no other circumstances establish clearly that he is untruthful. As discussed below, there were earlier indications that Petitioner might wish to

if Lopez-Salazar's version of these events is credited, the case falls within the first category of such cases, and counsel's failure to file a notice of appeal is professionally unreasonable per se.  Flores-Ortega, 528 U.S. at 477; see also Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005).  If however, the court discounts Petitioner's testimony and accepts the implications of counsel's version of the events, then a request that counsel file an appeal was not clearly made.  In such circumstances, the case falls within the third category of such cases and further analysis of counsel's performance is required.  As the Court in Flores-Ortega instructs:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question:  whether counsel in fact consulted with the defendant about an appeal.  We employ the term "consult" to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.  If counsel has consulted with the defendant, the question of deficient performance is easily answered:  Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. . . .  If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question:  whether counsel's failure to consult with the defendant itself constitutes deficient performance.  That question lies at the heart of this case:  Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

528 U.S. at 478.

Based on the testimony at the evidentiary hearing, Lopez-Salazar and counsel agree that they never spoke, much less "consulted," after sentencing.  According to counsel, what limited discussion they had about an appeal occurred when they met to discuss the proposed

---

appeal in this case which lend credence to his testimony.

9

plea agreement.⁵ The content of such discussion is unclear, but it is apparent that they focused on the waiver of appeal provision and that ultimately, the provision was viewed as a significant disadvantage to Petitioner's signing off on the proposed plea agreement. This discussion took place well before sentencing and it is undisputed that there were no discussions at sentencing or thereafter about the advantages or disadvantages of Petitioner appealing the sentence imposed. By my conclusion, the "antecedent" question required in this scenario must be answered in the negative. Counsel did not "consult" with Lopez-Salazar as such term is defined in Flores-Ortega.⁶

As for next inquiry, whether the failure to consult constitutes deficient performance on counsel's part, I conclude that it does in the given circumstances. Whether to appeal is the

---

⁵While a copy of the proposed plea agreement was not introduced at the hearing, it appears that it would have contained the standard waiver of appeal language employed by the United States Attorney in this district.

⁶In Thompson, the court stated "adequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal."). 2007 WL 824118, *2. The circumstances of each case dictate how much consultation is necessary. Flores-Ortega, 528 U.S. at 489 (Souter, J., concurring in part and dissenting in part) ("If the crime is minor, the issues simple, and the defendant sophisticated, a 5-minute conversation with his lawyer may well suffice; if the charge is serious, the potential claims subtle, and a defendant uneducated, hours of counseling may be in order."). "The question of what constitutes adequate consultation, however, is not one of duration, but of content." Thompson, 2007 WL 824118, *2. But this presupposes that counsel has at least some meaningful consultation with his client. "[O]nly in the extraordinary case will a defendant need no advice or counsel whatever." Flores-Ortega, 528 U.S. at 489. Here, Petitioner was an uneducated and unsophisticated defendant who spoke only in a foreign language and was involved in what the district judge described at sentencing as "a complex international criminal enterprise to transport large quantities of cocaine on the high seas . . ." In the circumstances, more discussion with counsel than is evidenced here was required.

10

client's decision, but that decision cannot be reached intelligently without adequate consultation with counsel.  As the Court stated,

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. . . .

Flores-Ortega, 528 U.S. at 480.  In making this determination, the court must take into account "all the information counsel knew or should have known."[7]  Id.  Here, the mere fact that Petitioner made a decision to plead guilty based on counsel's advice that a plea offered him the best possible outcome is a significant but not determinative circumstance.  In reaching this decision, Petitioner rejected entering a plea agreement with the government because, as counsel said, it offered no advantage and carried a significant disadvantage in that the agreement would require the Petitioner to waive (most of ) his rights to an appeal.  Thus, while Petitioner's guilty plea evidences his desire to bring his case to a conclusion without the necessity of a trial, he effectively preserved his right take an appeal if he wished.  Further, at sentencing, counsel raised two plausible arguments on Petitioner's behalf in favor of a reduced sentence, (1) that Petitioner played a minor role in the conspiracy and deserved a downward adjustment under the sentencing guidelines, and (2) a sentence below the suggested guideline range but consistent with the mandatory minimum 120 months required by law was sufficient and consistent with the factors set forth at 18 U.S.C. § 3553.  Although the court rejected both arguments with well-reasoned commentary and counsel did not believe his

---

[7]The Court suggests that the fact that a defendant has pleaded guilty is a highly relevant factor.  Other suggested factors to consider include whether the defendant received the sentenced bargained for as part of a plea and whether the plea expressly reserved or waived some or all appeal rights.

"minor-role" argument was a good one for appeal, the likelihood of success on appeal is not the proper focus. See Gomez-Diaz, 433 F.3d at 793 (The petitioner "is entitled to an out-of-time appeal regardless of whether he can identify any arguably meritorious grounds for appeal. . . ."). In any event, the decision to appeal was for the Petitioner to make, not his counsel. Petitioner's previous rejection of the plea agreement demonstrates to me (and should have demonstrated to counsel) that he desired to take an appeal if the outcome called for it. Further, in the circumstances of this case, a rationale defendant in Petitioner's shoes would wish to appeal in these circumstances.

In sum, whether to appeal was the Petitioner's decision, not counsel's alone. Here, the defendant was unsophisticated in almost every significant way. A decision not to appeal could not be reached intelligently without adequate consultation with counsel. The circumstances of this case dictated that further consultation beyond those held earlier in the discussions related to the plea agreement were necessary in order for counsel to fulfill his obligations to the Petitioner under the Sixth Amendment. As noted above "only in the extraordinary case will a defendant need no advice or counsel whatever." Flores-Ortega, 528 U.S. at 489. The decision in Thompson is instructive as well. There, the court stated,

> The content of the exchange in this case did not constitute adequate consultation. Simply asserting the view that an appeal would not be successful does not constitute "consultation" in any meaningful sense. No information was provided to Thompson from which he could have intelligently and knowingly either asserted or waived his right to an appeal. This record is clear that no reasonable effort was made to discover Thompson's informed wishes regarding an appeal. Under these circumstances, any waiver by Thompson of his right to appeal was not knowing and voluntary.

Thompson, 2007 WL 824118, *2. Here, Petitioner gave an early indication of his desire to plead and, in the circumstances of this sentence, where plausible issues were raised at

12

sentencing and could be appealed, a rationale person would want to appeal. Consequently, defense counsel performed deficiently by failing to meaningfully consult with Lopez-Salazar regarding whether he wished to appeal.

B.

The second prong of the Strickland test requires a showing of prejudice: "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a failure to file an appeal that a defendant wishes to take, "prejudice is presumed because rather than being denied the opportunity for a fair proceeding, the defendant is denied the opportunity for a proceeding at all." Gomez-Diaz, 433 F.3d at 792 (citing Flores-Ortega, 528 U.S. at 483). Thus, a defendant who establishes that his counsel has ignored his wishes and failed to appeal his case need only show a reasonable probability that "but for the attorney's deficient performance, he would have appealed." Id. (citing Flores-Ortega, 528 U.S. at 484).

Here, if Petitioner's version that he advised his counsel to appeal is accepted, prejudice is presumed because he was denied the right to a judicial proceeding to which he was entitled. Alternatively, even in the absence of an express request that counsel appeal the sentence, I find from all the circumstances a reasonable probability that, but for counsel's deficient performance, Petitioner would have appealed. In either event, Lopez-Salazar is entitled to an appeal. Flores-Ortega, 528 U.S. at 484 ("[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal.").

III.

Accordingly, it is RECOMMENDED that the court **GRANT** Petitioner's **Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody** (Doc. 1).  In accordance with the procedures applicable in this circuit, the court should then vacate the judgment and sentence, reimpose the same sentence, and again advise the Defendant of the rights associated with an appeal from the criminal judgment and the fact that he has ten days from the date of sentencing to file his notice of appeal.  See United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000).

                                                    Respectfully submitted on this
                                                    27th day of April 2007.

                                                  THOMAS B. McCOUN III
                                                  UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
United States District Judge
Counsel of Record
Former counsel